**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WILLIAM KLERONOMOS, <br><br> Plaintiff, <br><br> v. <br><br> AIM TRANSFER & STORAGE INC., and WILLIAM T. SACKMASTER, <br><br> Defendants. | No. 19-CV-01844 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION & ORDER**

Plaintiff William Kleronomos brings suit against Defendants Aim Transfer & Storage Inc. ("Aim") and William Sackmaster for injuries arising out of a traffic accident that took place on March 6, 2014. Plaintiff alleges negligence (Count I), vicarious liability (Count II), willful and wanton hiring (Count III), willful and wanton entrustment (Count IV), and willful and wanton retention (Count V). (Dkt. 100). Aim has asked the Court to determine whether Illinois or Wisconsin law will govern to Counts III, IV, and V. (Dkt. 123). For the reasons set forth below, the Court will apply Wisconsin law.

**BACKGROUND**

Plaintiff Kleronomos is an Illinois citizen.[1] Defendant Aim is a Wisconsin trucking company that regularly transports cargo from Wisconsin to the railroad depots in Chicago. Defendant Sackmaster is a Wisconsin citizen. Sackmaster was

---

[1] The facts in this section come from the Third Amended Complaint. (Dkt. 100).

working for Aim as a truck driver on March 6, 2014 when Sackmaster and Kleronomos were involved in a traffic accident in Chicago, Illinois. Kleronomos suffered extensive injuries. Prior to that accident, Sackmaster had been involved in two other "preventable" accidents in Illinois while driving for Aim.

This personal injury lawsuit has been making its way through state and federal courts since March 2, 2016.[2] (Dkt. 123, Ex. A). In addition to negligence (Count I) and vicarious liability for an employee's negligence (Count II), the most recent iteration of the Complaint alleges willful and wanton hiring (Count III), willful and wanton entrustment (Count IV), and willful and wanton retention (Count V). (Dkt. 100). In those Counts, Kleronomos alleges that because of bad reviews from former employers, multiple failed drug tests, prior "at fault" accidents, and repeated instances of "loss of consciousness behind the wheel," Aim knew Sackmaster was unfit to drive a truck but employed him to do so anyway. In Counts III–V Kleronomos seeks punitive damages.

## DISCUSSION

Aim agrees that the Court should apply Illinois law to Counts I and II, (Dkt. 203, fn. 1), but argues that Wisconsin law should be applied to Counts III, IV, and V. *See, e.g., Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 747 (N.D. Ill. 2010) (citing *Townsend v. Sears, Roebuck, & Co.*, 227 Ill. 2d 147 (Ill. 2007)) ("Choice of law is addressed on an issue-by-issue basis, and as a result, different states' law may govern different issues in a particular case"). A federal court sitting in diversity applies the

---

[2] The Court recently denied Plaintiff leave to file a fourth amended complaint adding negligent supervision and alter ego counts. (Dkts. 245 and 247).

2

law of the state in which it sits to determine choice of law. *See Malone v. Corrs. Corp. of Am.*, 553 F.3d 540, 543 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)). Therefore, the Court applies the same choice of law analysis that an Illinois state court would apply.[3]

## I. Actual Conflict

An Illinois state court or a "district court [sitting in diversity] is required to engage in a choice of law analysis only 'if there is a conflict between Illinois law and the law of another state such that a difference in law will make a difference in the outcome.'" *Board of Forensic Document Examiners, Inc. v. American Bar Assoc.*, 922 F.3d 827, 831 (7th Cir. 2019) (citing *West Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 223 (7th Cir. 2017)). "[T]he party seeking a choice of law determination," has the burden of establishing "the existence of an outcome-determinative conflict." *Id*. Aim highlights four potentially outcome-determinative conflicts between Illinois and Wisconsin law.

---

[3] Aim's motion, (Dkt. 193), relies on *Guillermo v. Brennan*, 691 F. Supp. 1151, 1156 (N.D. Ill. 1988), which applies the Second Restatement of Conflict of Laws and finds that "Illinois courts [. . .] look[] to the law of the state with the 'most significant contacts' to the case." *Id*. (citing *Ingersoll v. Klein*, 46 Ill.2d 42, 48 (1970)). Kleronomos complains Aim did not address *Townsend*, 227 Ill. 2d at 175, and the Second Restatement's presumption that the law of the state where the injury occurred should be applied, subject to exception if another state has more "significant contacts." (Dkt. 196). Although *Townsend* is a more recent representation of Illinois law, these cases are not in conflict. The Court rejects Plaintiff's arguments that Aim waived arguments (Dkt. 196, 4) and notes that Kleronomos raised and briefed all the pertinent case authority. (Dkt. 196, 4–14). The Court, at its discretion, will consider both sides of the choice of law issue. *See Narducci v. Moore* 572 F.3d 313, 324 (7th Cir. 2009) ("the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited"). Further, since Kleronomos addressed the pertinent authority, his motion to file a sur-reply (Dkt. 204) is denied.

### A. Punitive Damages for Vicarious Liability

First, Aim notes that while Illinois allows punitive damages to be levied against an employer who is vicariously liable for the torts of their employees, Wisconsin does not. *Compare Lawlor v. N. Am. Corp.*, 949 N.E.2d 155, 174 (Ill. App. Ct. 1st Dist. 2011) (citing restatement (Second) of Agency, § 271C (1958)) *with Franz v. Brennan*, 150 Wis. 2d 1, 440 N.W. 2d 562 (1989). This distinction is irrelevant, since only Count II involves vicarious liability for the torts of an employee and Aim agrees Count II is subject to Illinois law. Counts III through V concern Aim's own liability for willful and wanton hiring, entrustment, and retention, not vicarious liability for Sackmaster's actions.

### B. Duty in Suits for Punitive Damages

Aim next asserts that in Illinois punitive damages may be awarded when a tort is committed with "fraud, actual malice, deliberate violence or oppression or when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard for the rights of others or for conduct involving some element of outrage similar to that found in a crime." *Ainsworth v. Century Supply Company*, 693 N.E.2d 510, 515 (Ill. App. Ct 1998) (quoting *Homewood Fishing Club vs. Archer Daniel Midland Co.*, 605 N.E.2d 1140 (Ill. App. Ct. 1992)). In Wisconsin, by contrast, plaintiffs "may receive punitive damages if evidence is submitted showing that the defendant acted maliciously toward the Plaintiff or in an intentional disregard of the rights of the Plaintiff." WI Stat § 895.043. While these are slightly different

4

formulations, it is not clear that they would result in a different outcome in the instant case.

### C. Standards of Proof in Suits for Punitive Damages

The fact that courts in Illinois and Wisconsin require plaintiffs to meet different standards of proof before awarding punitive damages is more likely to be outcome-determinative. In Illinois, the conduct supporting punitive damages must be proven by a preponderance of the evidence. *See Brdar v. Cottrell, Inc.*, 867 N.E.2d 1085, 1102 (Ill. App. Ct. 2007). In Wisconsin, the standard of proof is clear and convincing evidence or a conclusion to a reasonable certainty. *See Sharp v. Case Corp.*, 595 N.W.2d 380 (Wis. 1999). This supports Aim's argument that there is a true conflict of laws.

### D. Cap on Punitive Damages

Finally, Illinois does not have a "cap" on punitive damages, *Mathi v. Accor*, 347 F3d 672, 676 (7th Cir. 2003), while Wisconsin caps punitive damages at $200,000.00 or twice the compensatory damages, whichever is greater. WI Stat § 895.043. When punitive damages are available in one state but not in another, a conflict of laws arises. *See Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 156 (2007) (finding a conflict because "Illinois does not prohibit the recovery of punitive damages in product liability cases" while in Michigan "only compensatory damages are available"). This same reasoning should apply to a cap on punitive damages.

Because there are at least two outcome-determinative differences between Illinois and Wisconsin law, a true conflict of laws exists.

5

## II. Resolving the Conflict of Laws

Illinois state courts have adopted the choice of law methodology set out in the Second Restatement of Conflict of Laws. *Ingersoll v. Klein*, 46 Ill.2d 42, 47–48 (1970). The "objective of that process" is to "apply the law of the state that, with regard to the particular issue, has the most significant relationship with the parties and the dispute." *Townsend*, 227 Ill. 2d at 159–60. After establishing that an actual conflict of law exists, the court determines whether the Second Restatement contains a presumptive rule. In personal injury action the rule is contained in § 146 which states:

> [i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 146 (1971). This passage creates the presumption that, unless Wisconsin has a *more* significant relationship with the "occurrence and the parties," Illinois law should be applied. *See Townsend*, 227 Ill. 2d at 163 ("a presumption exists, which may be overcome only by showing a more or greater significant relationship to another state").

*Townsend* teaches that "the court must test this presumptive choice against the principles embodied in section 6 [of the Second Restatement] in light of the relevant contacts identified by the general tort principle in section 145." 227 Ill. 2d at 158. The most important principles embodied in § 6 of the Second Restatement are "the relevant policies of the forum; [. . .] the relevant policies of other interested

6

states and the relative interests of those states in the determination of the particular issue; and [. . .] the basic policies underlying the particular field of law."[4] *Townsend*, 227 Ill. 2d at 170. The § 145(2) "factual contacts or connecting factors" that the Court evaluates in light of these principles are: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These principles and factors are "to be evaluated according to their relative importance with respect to the particular issue." *Townsend*, 227 Ill. 2d at 160 (citing Restatement (Second) of Conflict of Laws § 145(2) (1971)).

### A. Place of Injury

Kleronomos was injured in Illinois. Aim argues that the place of injury is "fortuitous," and therefore this factor should not be given much weight. This argument relies on § 146, Comment c, of the Second Restatement, which indicates that "[t]he likelihood that some state other than that where the injury occurred is the state of most significant relationship is greater in those relatively rare situations where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties." Second Restatement of Conflict of Laws § 146, Comment c, at 430–31 (1971)). Section 145 likewise cautions that "situations exist where the place of the injury will not be an important contact, for example, where the

---

[4] Section 6 lists principles not relevant to personal injury suits, including the needs of the interstate and international systems, the protection of justified expectations, certainty, predictability and uniformity of result, and ease in the determination and application of the law to be applied." *Townsend*, 227 Ill. 2d at 159 (citing Restatement (Second) of Conflict of Laws § 6, at 10 (1971)).

7

place of the injury is fortuitous." *Townsend,* 227 Ill. 2d at 168 (citing Second Restatement of Conflict of Laws § 145, Comment e, at 419 (1971)).

Illinois courts have held, however, that "driving [a] truck through [the state where the injury occurred] on a work-related assignment" does not mean that state is "fortuitous," particularly when one party is a resident of that state. *Denton v. Universal Am-Can, Ltd.*, 26 N.E.3d 448, 454–55 (Ill. App. 1st Dist. 2015). The paradigmatic case of a "fortuitous" states-of-injury is that of an airplane crash in a state where none of the plaintiffs or defendants reside. *See, e.g., In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 615 (7th Cir. 1981) ("air crash disasters often present situations where the place of injury is largely fortuitous"); *Rosenblum v. Warner & Sons, Inc.*, 819 F. Supp. 767, 770 (N.D. Ind. 1993) (when Florida plaintiffs had a car accident in Indiana because of a faulty trailer hitch, Indiana law did not apply to the hitch-installer defendants because the location where the hitch broke was purely fortuitous).

Illinois was not a fortuitous location. Plaintiff resided here and the Defendants regularly conducted business here. This factor weighs in favor of applying Illinois law.

**B. Location of Conduct Causing Injury**

Kleronomos argues that "absent the accident caused by the incompetent driver Sackmaster in Illinois, there would be no injury and nothing to litigate [so Aim] cannot artificially separate its conduct in Wisconsin from its conduct in Illinois." (Dkt. 196, 7). But it was Kleronomos, not Aim, who separated Aim's conduct in Wisconsin

8

from its conduct in Illinois by bringing *employment* claims against Aim (Counts III through V) in addition to the vicarious liability claim (Count II).

The Plaintiff's reliance on *Townsend* is misplaced. *Townsend* found that the "conduct causing the accident" was not just where the defective product was manufactured but also where it was used because the defendants "pled affirmative defenses alleging contributory negligence on the part of [the decedent]" in the state where the injury occurred. *Townsend*, 227 Ill. 2d at 168–69. Defendant has not asserted affirmative defenses to Counts III through V here.

Similarly, in *Denton*, an Illinois appellate court held that "[w]hile the negligent hiring of [the defendant truck driver] might have taken place elsewhere, plaintiffs could not bring such a claim unless the negligent conduct and resulting injury first occurred in [the state of injury]." *Denton*, 26 N.E.3d 455. That case is distinguishable, however, because there, "the record [was] unclear as to where the hiring/entrustment agreements were entered into, let alone exactly how they were entered into." *Id.* Moreover, *Denton* did not involve the award of punitive damages. Those damages, if awarded in the instant case, would be solely attributable to the deliberate actions alleged against Aim that took place in Wisconsin, not the negligent actions of Sackmaster that took place in Illinois.

With respect to the hiring, entrustment, and retention Counts, the "location of the conduct that caused the injury" was primarily Aim's headquarters in Wisconsin. This factor weighs in favor of applying Wisconsin law.

9

## C. Domicile, Residence, Incorporation, Place of Business

Kleronomos is an Illinois resident, while Sackmaster is a Wisconsin resident and Aim is both incorporated and headquartered in Wisconsin. Aim's business involves transporting cargo across state lines into Illinois, however. This factor does not weigh heavily in favor of applying either Wisconsin or Illinois law.

## D. Location of relationship between parties

Kleronomos and Sackmaster did not have a relationship prior to their accident, so this prong does not figure into the Court's analysis. *See Hammond v. Sys. Transp., Inc.*, No. 11-CV-1295, 2012 WL 3234865, at *9 (C.D. Ill. Aug. 6, 2012) ("Because there was no preexisting relationship between the decedents [in a car accident] and Defendants, this factor is of little importance.").

## E. Policy Principles

The purpose of this analysis is not to "count contacts" but instead to "consider them in light of the general principles embodied in section 6." *Townsend*, 227 Ill. 2d at 169. To that end, the Court must consider the policies underlying the treatment of punitive damages employed by Illinois and Wisconsin. Wisconsin's standard of proof makes it more difficult to prevail on a claim for punitive damages and places a cap on any award of such damages. Illinois, in contrast, requires a lower standard of proof to prevail on a claim for such damages and allows punitive damages that far exceed compensatory damages.

According to Comment e to § 146 of the Second Restatement, if the purpose of a state's law "is to punish the tortfeasor and thus discourage others from following

10

his example, there is better reason to say that the state where the conduct *occurred* is the state of dominant interest than if the tort rule is designed primarily to compensate the victim for his injuries," in which case the law of the state where the tortious conduct took place is more likely to govern. *See* Restatement (Second) of Conflict of Laws § 146 (1971) (emphasis added). Furthermore, punitive damages are widely understood to "serve a public goal of punishing the defendant for its wrongdoing and protecting the public from future misconduct, either by the defendant or by others." *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2017 WL 1836435, at *22 (N.D. Ill. May 8, 2017) (citing *Ziarko v. Soo Line R. Co.*, 161 Ill. 2d 267, 276 (1994)). Thus, Wisconsin's state policies counsel in favor of applying Wisconsin law, since Wisconsin is the state where the hiring, entrustment, and retention occurred. This is supported by the case law.

In *Townsend* the Illinois Supreme Court reviewed a products liability claim in which an Illinois manufacturer was accused of injuring a consumer in Michigan. Illinois allowed punitive damages, Michigan did not. Because the injury took place in Michigan, one of the § 145 factors, the location of the injury, favored applying Michigan law. The injury was attributable to conduct in Illinois (where the product was designed) *and* Michigan (where the buyer's contributory negligence also helped cause the accident), so factor (b) was "a wash." *Id.* at 169. The parties were domiciled in different states so factor (c) was also a wash, but the relationship between the

11

parties, factor (d), was centered in Michigan where the product was purchased. So, from the outset, the § 145 factors favored applying Michigan law.

Rather than apply Michigan law, however, the lower court gave substantial weight to the fact that the choice of law dispute involved punitive damages, meant to alter conduct rather than compensate victims, and held that the law of Illinois should apply. *Townsend*, 227 Ill. 2d 173. The Illinois Supreme Court reversed. It conceded that when punitive damages are involved, the "purpose is to punish the tortfeasor and thus to deter others from following his example" meaning that "there is [a] better reason to say that the state where the conduct [that allegedly caused the injury] occurred is the state of dominant interest and that its local law should control than if the tort rule is designed primarily to compensate the victim for his injuries." *Id*. at 174 (citing Second Restatement of Conflict of Laws § 146, Comment e, at 432–33 (1971)). The Court reasoned, however, that "[t]his factor must not be over emphasized," because "[t]o some extent, at least, every tort rule is designed both to deter other wrongdoers and to compensate the injured person" although "the relative weight of these two objectives varies somewhat from rule to rule." The *Townsend* court concluded that the policy principles underpinning the punitive damages regimes of Illinois and Michigan, when considered alongside the contacts to each state, did not override the presumption that the state where the injury occurred should determine the governing law.

The first case to apply choice of law after *Townsend* in this district to punitive damages was *Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744 (N.D. Ill. 2010). *Smith* was

12

a product liability suit in which a California manufacturer was sued by a Michigan resident for an injury that took place in Michigan. While California allowed punitive damages, Michigan did not. *Id*. at 748. The court analyzed *Townsend* and reasoned that the "purpose of punitive damages is a purely *public* one. The public's goal is to protect itself from future misconduct, either by the same defendant or other potential wrongdoers." *Id.* at 748 (citation omitted) (emphasis original). The Court relied on *Ziarko,* 161 Ill. 2d at 276, to determine that in Illinois compensatory damages are for making "amends for the injuries suffered by the plaintiff, whereas punitive damages are intended to punish the wrongdoer and serve as a deterrent to antisocial behavior in the future." Generally, the *Smith* court observed, "the purpose of a decision to impose or not impose punitive damages has to do with regulation of conduct." 753 F. Supp. 2d 744, 748 (quoting *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979,* 644 F.2d 594, 617 (7th Cir.1981)). That means that the defendant's state of domicile "has a considerably stronger policy interest in whether punitive damages are available that the state where the plaintiff's injury occurred." *Id.*

The *Smith* court concluded, persuasively, "Michigan has only a minimal interest in whether a corporation that does not reside within Michigan's borders should or should not be assessed punitive damages based on conduct that likewise occurred outside the state. This [interest] is far outweighed by California's interest in regulating the conduct of its corporate citizens." *Id.* at 749. *See also Curtis v. TransCor America, LLC*, No. 10 CV 4570, 2012 WL 1080116 *10 (N.D. Ill. Mar. 29, 2012) (where prisoner died in Illinois on bus traveling from Kansas to Indiana,

13

conduct causing the accident occurred in Tennessee, Illinois, and Indiana, and where Tennessee allowed punitive damages in wrongful death suits while Illinois and Indiana did not, court "f[ound] it significant that the issue [was] the imposition of punitive damages, which are meant to punish wrongdoing and deter future, similar misconduct," and held the "state in which a defendant is domiciled (Tennessee) has a considerably stronger policy interest in whether punitive damages are available than the state in which the plaintiff's injury occurred.") (quoting *Smith*, 753 F. Supp. 2d at 748).

*Smith* distinguished *Townsend* because the defendant in Townsend alleged contributory negligence and so the alleged wrongdoing was the concern of two state's punitive damage laws. Moreover, in *Smith* (and the instant case) the § 145 factors did not counsel in favor of applying the law of the state where the injury occurred, but instead resulted in a wash. By contrast, in *Townsend* the § 145 factors were in favor of the state where the injury occurred.

In reaching its decision, *Smith* rejected the reasoning of *Hammond v. Sys. Transp., Inc.*, No. 11 CV 1295, 2012 WL 3234865 (C.D. Ill. Aug. 6, 2012), which held:

> the Illinois Supreme Court made clear in *Townsend* that (1) the presumption in favor of applying the law of the place of injury is, in most cases, going to be a very strong one; (2) this strong presumption extends to punitive damages claims; and (3) the plaintiff's domicile has an interest in the law to be applied in punitive damages claims, even when the defendant is a non-domiciliary, and even in cases in which the plaintiff's domicile does not provide for punitive damages.

14

*Id*. at *12. The *Hammond* court reasoned that the *only* circumstances in which a state's punitive damages policy will outweigh the presumption in favor of applying the law of the place of injury is when "the place of injury is fortuitous." *Id*.

With respect, this Court is persuaded by the reasoning of *Smith* court and its explanation of the purpose served by punitive damages. The Court finds it particularly persuasive here, where the alleged conduct arises not from Sackmaster's tortious driving but from Aim's tortious hiring and mismanagement—decisions made in Wisconsin by a Wisconsin corporation. *See also In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2017 WL 1836435, at *22 (N.D. Ill. May 8, 2017) (respectfully disagreeing with the analysis in *Hammond* and holding that "the state in which a defendant is domiciled therefore tends to have a stronger policy interest in whether punitive damages are available than the state in which the plaintiff's injury occurred. Thus Illinois' interest in regulating [the defendant's] conduct outweighs whatever interest plaintiffs' home states have in protecting non-resident businesses against excessive liability.")

The Court finds Aim has rebutted, for these specific Counts, the strong presumption that the place of the injury governs. Although Illinois law will govern the negligence alleged in Counts I and II, Wisconsin has the greater interest in sanctioning its corporations' alleged willful and wanton hiring, entrustment and retention.

15

## **CONCLUSION**

For the reasons stated above, the Court grants Defendants' motion for choice of law determination (Dkt. 193) and will apply Wisconsin law to Counts III, IV, and V. Plaintiff's motion for a finding that the defense has forfeited new arguments raised in its choice of law reply, or for leave to file a sur-reply (Dkt. 204) is denied.

E N T E R:

Dated: April 20, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge